# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RNR USA LLC,<br>75 Ponce de Leon Avenue NE<br>Atlanta, GA 30308<br>                        Plaintiff,<br><br>      v.<br><br>TRIPWIRE SOUTH, LLC,<br>1475 Highland Avenue Road<br>Gettysburg, PA 17325<br><br>RYAN J. MORRIS<br><br>JOSHUA MILLS<br><br>CONAN HIGGINS<br><br>SKYBOLT CONSULTING GROUP, LLC<br>1201 Orange Street<br>Wilmington DE 19801<br>                        Defendants. | Civil Action No. |

# COMPLAINT

Plaintiff RNR USA LLC, by and through its undersigned counsel, files its Complaint against Tripwire South, LLC (Tripwire), Ryan Morris, Joshua Mills, Conan Higgins, and Skybolt Consulting Group, LLC and avers as follows:

# INTRODUCTION

1. Tripwire fraudulently lured Plaintiff into contracting for the purchase of 30 metric tons of falsely advertised EDC-4 explosives worth $4.2 million.

2. After completion of the initial contract, the parties intended to enter into a second contract for an additional 170 metric tons worth nearly $24 million.

3. Tripwire deployed a fraudulent scheme that grossly oversold its ability to obtain faster-than-average export licenses for the product to be shipped abroad, while trumpeting lofty—but false—explosive specifications for the product.

4. Tripwire refused to return Plaintiff's $2.1 million deposit after Tripwire failed to obtain the necessary export licenses it had so confidently touted, all while having produced EDC-4 explosives of a far lesser specification than agreed.

5. The explosives were to be used in defending the United States's ally, Ukraine, in the ongoing war against Russia—an effort that was frustrated by Tripwire's fraudulent and deceitful conduct detailed below.

6. The products never made it to our ally.

## NATURE OF THE CASE

7. This action sounds in fraud, contract, and tort.

8. Plaintiff contracted with Tripwire for the sale of 30 metric tons of EDC-4, a class 1.1D explosive, at a price of $140 per kilogram.

9. On the condition that the initial contract was successful, Plaintiff thereafter expected to purchase an additional 170 metric tons of EDC-4 from Tripwire at the same price per kilogram.

10. The corresponding May 8, 2025 Purchase Order and May 9, 2025 Supply Agreement detailed the production, supply, and delivery of the EDC-4 in exchange for payment of $4.2 million to Tripwire.

11. Plaintiff paid Tripwire a fifty percent (50%) deposit totaling $2.1 million in reliance upon Tripwire's representations alleged below.

12. Tripwire, and Tripwire's attorney Conan Higgins, were obligated to ensure compliance with all U.S. export control regulations so that Plaintiff could ship the EDC-4 out of the United States. (Exhibit A, ¶ 7; Exhibit B, ¶ 6).

13. Tripwire was required to obtain an export license, commonly referred to as a DSP-5, from the U.S. Department of State's Directorate of Defense Controls division, pursuant to the International Traffic in Arms Regulations ("ITAR").

14. Plaintiff collaterally brokered the sale of the EDC-4 to a Ukrainian State Company, Mikron LLC, at a cost of $165 per kilogram, a $25 per kilogram profit margin.

15. Plaintiff's buyer intended to use the product in Ukraine's defense of the Russo-Ukrainian war in tandem with the foregoing efforts.

16. After the $2.1 million deposit sent to Tripwire on May 27, 2025, and in further reliance upon Tripwire's representations detailed herein, Plaintiff began coordinating logistics for the sea and air shipment of the EDC-4 abroad.

17. Tripwire made numerous fraudulent misrepresentations to Plaintiff to induce Plaintiff to enter the Contract, and to avoid Plaintiff from rescinding the Contract after it had been signed.

18. A centerpiece of Tripwire's sales pitch was its surprisingly efficient turn-around time for obtaining the export license.

19. Tripwire represented it could secure the export license in forty-five (45) days.

20. The forty-five (45) day marker was well less than the standard sixty (60) day window for the Directorate of Defense Control's response timeframe.

21. Tripwire, through members including Ryan Morris, represented that Higgins, as an ITAR expert, would handle the export license application.

22. Tripwire, through members including Joshua Mills, represented that Higgins worked with ITAR matters 24/7, and had been obtaining similar licenses within forty-five (45) days because of how routinely Tripwire applied for them.

23. Plaintiff relied upon Tripwire's representations regarding Higgins' expertise and familiarity with the export license application process, DSP-5s paperwork, and ITAR generally.

24. Tripwire, through Higgins, bungled the application for an export license, resulting in the license being Returned Without Action ("RWA").

25. The DSP-5 export license application contained fatal flaws that led to the issuance of the RWA.

26. On information and belief, Higgins had never previously applied for an export license for EDC-4.

27. Upon further information and belief, Higgins does not hold the necessary in-house counsel certification as required by the Pennsylvania Board of Law Examiners.

28. Higgins' mishandling of the export license application was negligent and tantamount to legal malpractice.

29. At a product inspection on June 19, 2025, Tripwire fraudulently misrepresented that it was the manufacturer of the EDC-4 to both Plaintiff and a Ukrainian representative.

30. Tripwire's misrepresentations were made verbally and in writing, and included Tripwire representatives spontaneously changing professional titles, purported job assignments, and signature lines in written communications all in an attempt to disguise Tripwire's fraud, evidencing Tripwire's knowledge thereof.

31. Tripwire also mispresented the technical specifications of the EDC-4 it was selling to Plaintiff.

32. Tripwire provided written specifications for the EDC-4 it was selling to Plaintiff detailing the product's chemical composition, RDX concentration, detonation velocity, explosive pressure, and other technical specifications.

33. Tripwire knowingly and intentionally provided written specifications to Plaintiff that misrepresented the product's chemical composition, RDX concentration, detonation velocity, explosive pressure, and other technical specifications.

34. RDX, a major component of traditional C-4, is an extremely powerful chemical compound with a high detonation velocity.

35. Tripwire specifically named RDX as a constituent component of the EDC-4 knowing it would increase the attractiveness of the product, despite being aware that the product did not contain the specified amounts of RDX.

36. Tripwire alleged that the specific percentage of RDX was part of a proprietary formula that could not be disclosed in an effort to conceal their misrepresentations.

37. Plaintiff later discovered that the specifications were patently false.

38. Tripwire's misrepresentations of the EDC-4's product specifications enabled it to fraudulently represent it was selling a more powerful explosive to Plaintiff than it actually was.

39. Upon information and belief, the misrepresentations were made not only to Plaintiff, but to the federal government at the time of obtaining a classification for the EDC-4.

40. The misrepresentation of an explosive on the USML is a federal crime, carrying potential penalties of imprisonment and fines, pursuant to 18 U.S.C. § 1001.

41. The misrepresentation or omission of necessary facts on a DSP-5 application is a federal crime, punishable by imprisonment and fines, pursuant to 22 CFR Part 127 and 22 U.S.C. §§ 2778, 2779.

42. The Contract contained an express refund clause, providing:

> Should the U.S. export permit not be granted, the Supplier shall refund one hundred percent (100%) of all payments received from RNR USA LLC within fifteen (15) business days. This provision ensures protection for both parties from regulatory uncertainties.

43. Plaintiff has demanded the return of its $2.1 million deposit, but Tripwire has refused, demanded that Plaintiff pick up the inferior product, and even sent Plaintiff a bill for storage costs.

44. As the result of Tripwire's conduct as alleged herein, Plaintiff has been sanctioned monetarily by the Ukrainian State Company, Mikron LLC, in the amount of $140,000.

45. This sanction was the first one ever received by Plaintiff, despite having conducted several billion dollars' worth of prior sales, and is a black mark on Plaintiff's reputation.

46. In fact, this black mark has already, and will continue to, interfere with and deleteriously harm Plaintiff's business.

47. As a result of Tripwire's conduct as alleged herein, Plaintiff has lost the contract with Mikron LLC for the original thirty (30) metric tons, as well as the contract for an additional one-hundred and seventy (170) metric tons.

48. As a result of Tripwire's conduct as alleged herein, Plaintiff's ability to obtain future contracts has been substantially impaired, and has damaged Plaintiff's reputation domestically and abroad.

49. As a result of Tripwire's conduct as alleged herein, Plaintiff has lost substantial profits, namely, $750,000 on the initial 30 metric tons, and $4,250,000 on the additional 170 metric tons.

50. Tripwire continues to wrongfully refuse to return Plaintiff's $2.1 million deposit, despite having failed to obtain the necessary export license as was contractually required, and a claim is accordingly made therefore.

## THE PARTIES

51. Plaintiff RNR USA LLC is a limited liability company organized and existing under the laws of Wyoming with a principal place of business at 75 Ponce de Leon Ave NE Ste 706, Atlanta, Georgia 30308.

52. Plaintiff is a broker and importer of United States Munitions List ("USML") Articles as defined by the United States Department of State.

53. Plaintiff maintains United States Department of State registrations to handle the USML Articles.

54. Tripwire is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania and is located at 1475 Highland Avenue Road, Gettysburg, Pennsylvania 17325.

55. Tripwire has held itself out as a specialized provider of pyrotechnic and explosive training equipment for federal agencies, particularly focusing on supporting military events and training programs.

56. Tripwire has also held itself out as a Service-Disabled Veteran Woman-Owned Business, a Small Business Administration classification that requires enrolled organizations to be at least 51% owned and controlled by one or more

service-disabled veterans, and also 51% owned and controlled by one or more women.

57. Ryan Morris is the founder and President of Tripwire. Morris owns and/or controls a number of alter-egos sharing the Tripwire name, including Tripwire South and Tripwire Aviation, which collectively form the Tripwire Group. He is a resident of the Commonwealth of Pennsylvania.

58. Joshua Mills is Tripwire's Chief Operating Officer. He "oversee[s] the strategic direction and operational execution of the company's core functions and projects," according to his LinkedIn page. He has been publicly associated with Tripwire since the company formed, and was involved in the transaction alleged in this action. He is a resident of the Commonwealth of Pennsylvania.

59. Conan Higgins is employed by Tripwire as in-house counsel. Higgins is a domiciliary of the state of Georgia, residing at 3911 Ga Highway 119 N, Pembroke, GA 31321-5804.

60. When Tripwire's Articles of Formation were filed in April 2021, Tripwire disclosed as owners, Morris, a Pennsylvania citizen; Ashle Morris (nee DeLauter), a Pennsylvania Citizen; Charles Arant, a Florida citizen; and Susan Boully, a Florida citizen.

61. Mr. Arant and Mr. Boully, whom Tripwire continued to list as owners in public filings as late as February 2022, have, upon information and belief, averred that they never held an ownership interest in Tripwire.

62. Defendant Skybolt Consulting Group LLC ("Skybolt") is a corporation organized and existing under the laws of the State of Delaware with a registered agent address of 1201 Orange Street, Ste 600, One Commerce Center, Wilmington, Delaware 19801.

63. Records maintained by Pennsylvania's Secretary of State list Skybolt as the "Governor" of Tripwire.

64. Skybolt has similarly indicated in public filings that it owns an interest in Tripwire. See Bizzell Corp. v. Tripwire South, LLC, *et al.,* No. 1:25-cv-00680-KMN (M.D.Pa. 2025) (ECF No. No. 20, at 3).

## JURISDICTION AND VENUE

65. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

66. Plaintiff is organized under the laws of Wyoming and has its principal place of business in Georgia.

67. Tripwire is a Pennsylvania limited liability company whose ultimate membership consists of Pennsylvania citizens.

68. Upon information and belief, no members of Tripwire are citizens of Georgia or Wyoming, making the parties diverse.

69. The amount in controversy exceeds $75,000.

70. Defendants reside and have their principal places of business in the Middle District of Pennsylvania.

71. Moreover, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Middle District of Pennsylvania and a substantial part of property involved is situated therein.

72. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), and (c)(2).

73. A substantial part of the events or omissions giving rise to the action occurred in the Middle District of Pennsylvania under. 28 U.S.C. § 1391(a)(2).

## COUNT I
## FRAUD

74. Plaintiff incorporates the preceding paragraphs as if the same were set forth at length herein.

75. Tripwire, knowingly and with the intent to deceive Plaintiff into entering into the Contract and to avoid recission thereof, mispresented:

    a. Tripwire's familiarity and experience with ITAR-related matters;

  b. Tripwire's familiarity and experience with obtaining export licenses necessary for the exportation of EDC-4 and related munitions;

  c. The EDC-4's adherence to the specifications of the EDC-4 being sold to Plaintiff;

  d. The manufacturer of the EDC-4 being sold to Plaintiff; and

  e. Such other misrepresentations as discovery may reveal.

76. Plaintiff relied upon the foregoing misrepresentations in agreeing to enter into the Contract with Tripwire.

77. Plaintiff relied upon the foregoing in deciding not to rescind the Contract with Plaintiff.

78. Plaintiff has been damaged as alleged above as a direct result of its reliance upon Tripwire's fraudulent misrepresentations.

**COUNT II**
**BREACH OF CONTRACT**

79. Plaintiff incorporates the preceding paragraphs as if the same were set forth at length herein

80. The Contract is a valid and enforceable contract.

81. Tripwire breached the Contract by:

  a. Failing to ensure compliance with all applicable United States export control regulations;

      b.      Failing to ensure compliance with ITAR;

      c.      Failing to properly complete and submit the DSP-5;

      d.      Failing to obtain an export license;

      e.      Failing to refund Plaintiff's $2.1 million payment to Tripwire;

      f.      Failing to manufacture and/or deliver the EDC-4 in accordance with the product specifications;

      g.      Filing an application with known fraudulent misrepresentations to the Department of State for the export of EDC-4; and

      h.      Other such breaches as discovery may reveal.

82. Plaintiff has been damaged by Tripwire's breach of the Contract as alleged above.

## COUNT III
## UNJUST ENRICHMENT

83. Plaintiff incorporates the preceding paragraphs as if the same were set forth at length herein.

84. In the alternative to Count II (Breach of Contract), Plaintiff asserts quasicontractual claims for unjust enrichment and *quantum meruit*.

85. Plaintiff paid $2.1 million to Tripwire with the earnest expectation Plaintiff would receive the duly specified EDC-4 and accompanying export license.

86. Plaintiff did not pay the $2.1 million to Tripwire gratuitously.

87. Tripwire accepted the $2.1 million dollar payment from Plaintiff, and appreciated the pecuniary benefit of receiving the funds.

88. It would be unjust and inequitable for Tripwire to retain the pecuniary benefit of receiving $2.1 million from Plaintiff under the circumstances alleged above.

89. Plaintiff is entitled to the quasicontractual relief of restitution of the $2.1 million it paid to Tripwire, and makes a claim therefore.

## COUNT IV
## NEGLIGENCE

90. Plaintiff incorporates the preceding paragraphs as if the same were set forth at length herein.

91. Higgins, as counsel for Tripwire, specifically undertook a duty to properly file the above-mentioned DSP-5 application.

92. The application was to be filed for, and on behalf of, Plaintiff.

93. Plaintiff relied on Higgins' purported expertise in filing DSP-5 applications.

94. Higgins knew that Plaintiff was relying on his expertise to properly file the application.

95. Higgins was negligent in:

    a. Failing to properly file the DSP-5 application;

    b. Filing an error-ridden DSP-5 application;

    c.    Knowingly filing a DSP-5 application with false statements and specifications; and

    d.    Failing to apprise himself of the knowledge necessary for appropriately filing a DSP-5 application.

96. As a direct and proximate result of Higgins' negligence, the application was RWA, due in no part to any negligence or action of Plaintiff.

97. Plaintiff has been damaged as alleged above by Higgins' negligence.

## COUNT V
## VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

98. Plaintiff incorporates the preceding paragraphs as if the same were set forth at length herein.

99. At all relevant times, Higgins was acting as an employee, agent, and/or servant of Tripwire.

100. Higgins' negligence occurred within the course and scope of his employment with Tripwire.

101. Plaintiff is entitled to relief therefore on the theory of *respondeat superior*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RNR USA LLC prays this Court enter judgment in its favor against Defendants in an amount to be proven at trial, but in any event, an

amount in excess of $75,000, plus punitive damages, interest, costs, attorney's fees, and for such and other relief as the Court deems just and proper.

                              Respectfully submitted,

                              **THOMAS, THOMAS & HAFER, LLP**

Date: December 15, 2025        By: */s/ Joshua J. Bovender*
                                         Joshua J. Bovender, Esquire
                                         Attorney I.D. 314001
                                         *Attorney for Plaintiff*

9282738.1